### GRANTZ et al. v. LUCKENBACH et al.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1914.)

#### No. 1286.

COLLISION ⊚⟹105—STEAMSHIPS IN HARBOR WATERS—MUTUAL FAULTS.

A decree finding that the steamships Sigmaringen and Jacob Luckenbach were both in fault for a collision in the Patapsco river in the daytime, when one, in swinging to enter the main channel from the anchorage grounds on its west side, passed into the Curtis Bay channel on the north, down which the other was approaching, held sustained by the evidence, on the ground that, although one was approaching from the starboard side of the other on a crossing course, neither obeyed the starboard hand rule, and that both proceeded at full speed without any signal agreement for crossing, and without proper reference to the movements of the other, although the danger of collision should have been apparent.

[Ed. Note.—For other cases, see Collision, Dec. Dig. ⊚⟹105.]

Cross-Appeals from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in admiralty for collision by Herman Grantz, master of the steamship Sigmaringen, against the steamship Jacob Luckenbach, with cross-libel by Edgar F. Luckenbach and others, joint owners of the Luckenbach, against the Sigmaringen. Decree against each vessel for half damages, and both appeal. Affirmed.

For opinion below, see 206 Fed. 226.

R. E. Lee Marshall, of Baltimore, Md. (Charles W. Field, of Baltimore, Md., on the brief), for appellants and cross-appellees.

James K. Symmers, of New York City (Barry, Wainwright, Thacher & Symmers, of New York City, on the brief), for appellees and cross-appellants.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. On April 28, 1913, at about 6:11 in the morning, the Jacob Luckenbach, an American steamship, and the Sig-

maringen, a German steamship, collided in the Patapsco river near the junction of the Curtis Bay and the Ft. McHenry channels. Both vessels were injured, and there was a libel by the Sigmaringen and a cross-libel by the Luckenbach; each alleging the other to be entirely at fault. The District Court found both vessels at fault and decreed accordingly, and both have appealed. The material issues may be disposed of without particular reference to the numerous assignments of error.

The Luckenbach, 300 feet long, with a full cargo of coal and drawing 24 feet of water, was proceeding from the Curtis Bay channel, which is 250 feet wide and 30 feet deep, with the intention of stopping temporarily in the anchorage basin before going to sea. Its maximum speed was 8 knots, and it was going at about 5 knots, an hour. The Sigmaringen, 394 feet long, in ballast and drawing about 26 feet of water, had anchored the night before in the anchorage basin, with the intention of proceeding the next morning to Baltimore. The anchorage basin, which is 300 feet wide and 35 feet deep, lies south of the Curtis Bay channel and west of the main Ft. McHenry channel, where the two channels come together almost at a right angle. There was some difference among the witnesses as to the precise point of the anchorage of the Sigmaringen; but we think the testimony well supports the conclusion of the District Judge that it was on the western side of the basin and about 1,000 feet from the White Spar buoy, which is located on the northwestern corner of the anchorage basin, where it makes off from the Curtis Bay channel.

Before the Sigmaringen moved, it was in a west wind of 6 miles an hour, and so headed west—whether exactly west, or a little north or south of west, is immaterial. The pilot on the Sigmaringen testified that from this position, in order to get into the Ft. McHenry channel, he gave the order, "Slow ahead, hard aport helm." When this starting order was given the Luckenbach was in full view, coming down the Curtis Bay channel about a half mile distant. The effect of the order was to start the engine at 6:07, and swing the ship to starboard with a slow movement forward. At 6:08, the engines were by order of the pilot, put at full speed ahead. The Sigmaringen, thus steaming diagonally across the anchorage grounds to the Ft. McHenry channel with the change to full speed, was headed to cross the course of the Luckenbach, coming down the Curtis Bay channel a very short distance away. On the other hand, the master of the Luckenbach could not fail to observe that the Sigmaringen was on his starboard; and he was therefore bound to know that if rule 19 applied his duty was to keep out of her way. It is not necessary to attempt to fix exact distances and locations, for in these narrow waters very careful navigation was due from two vessels in such close proximity.

It should have been evident to the pilot of the Sigmaringen, in this situation, that there would be some risk of the Luckenbach getting out of the channel, if she attempted to pass around the Spar buoy astern of the Sigmaringen. The risk would have been obviously greater if the Sigmaringen kept its slow speed, which she was bound to do under article 21 if she intended to depend on the Luckenbach's observing article 19 and keeping out of her way. The plain view of the Luckenbach going straight ahead was sufficient warning to the Sigmaringen that

the master of the Luckenbach did not agree that he was bound to keep out of the way or pass astern, and yet she proceeded and increased her speed in violation of the rule.

The warning to the master of the Luckenbach of the danger of collision was equally clear from the moment that he saw the Sigmaringen weigh anchor and commence to turn; for this was notice that she probably intended to leave the anchorage basin and go into one or the other of the channels. The Luckenbach was then about opposite the last buoy, which was very near the junction of the two channels, and intending to go into the anchorage basin, from which the Sigmaringen was moving.

This statement of the general course of the two vessels and their proximity, about which there seems to be no dispute, leaves no doubt that due care required that neither should proceed without an understanding between them as to the course each would take. We cannot resist the conclusion that both went stubbornly ahead without any understanding, each taking for granted, without response from the other, that in a doubtful situation the other had heard and would act on her signal. The Sigmaringen gave one blast as she straightened for the channel, and, though receiving no answer to indicate that the Luckenbach had heard and would keep clear of her starboard course, she not only continued, but increased her speed, and slightly changed her course. Reliance on the sight of escaping steam from the whistle of the Luckenbach without any sound, as indicating an assent to her signal, cannot excuse this negligence; for the failure of the whistle of the Luckenbach to sound should have been notice to the Sigmaringen that the Luckenbach might be unable to signal her course.

Under these conditions the duty of the Sigmaringen to slow down or reverse, rather than accelerate her speed, seems plain. The case of The Cygnus, 142 Fed. 85, 73 C. C. A. 309, relied on by counsel, was entirely different. There the Dimock, the privileged vessel, kept her speed, gave the signal of one blast, heard the signal given by the Cygnus, the burdened vessel, of two blasts, which indicated a proposal to waive the privilege; the Dimock refused to respond, thus indicating plainly her refusal to waive her privilege. The court therefore held that the Dimock was not in fault, and that the collision was due to the ignorance of the master of the Cygnus that it was his duty under the rule to keep out of the way of the Dimock unless she waived her privilege.

The utmost that can be said for the master of the Luckenbach is that he might have had reason to doubt, when the Sigmaringen first weighed anchor, whether she would take an opposite or a crossing course. But he had every reason to believe, from the movement of the Sigmaringen, that in leaving the anchorage basin she would steer into one of the channels with the risk of collision, unless the required precautions were taken. She was on his starboard, and his obligation was to keep out of her way, if she did that which he ought to have known she probably would do, namely, go into the main channel across his own course, which was to be into the anchorage basin. Indeed, he admits that, although he saw the Sigmaringen under hard aport helm, he took for granted she would move starboard to starboard, did not signal, and kept on his course, without slowing down, reversing, or taking any

other precaution. Contrary to the well-established rule, he expected to cross the bow of the Sigmaringen by a "close shave." His testimony shows that he thought of the duty of having an understanding with the Sigmaringen by signals, but did not give them promptly, for fear of confusing two other vessels. He later did signal with two blasts, and, though there was no response, did not reverse until it was too late. It seems obvious that when the master of a steamer sees that the circumstances require signaling the nearest vessel to avoid misunderstanding, and cannot give the signal for fear of confusing other vessels, his duty is to stop.

We see no ground to excuse either of the vessels under the rule that the privileged steamer will not be held in fault for maintaining her course and speed as long as it is possible for the other to avoid her by porting, in the absence of some distinct indication that the burdened vessel is about to fail in her duty. The Delaware, 161 U. S. 466, 16 Sup. Ct. 516, 40 L. Ed. 771; The Cygnus, 142 Fed. 85, 73 C. C. A. 309.

On the contrary, accepting with full faith the reasons given by the officers of each of the vessels for the course they took, both vessels were clearly in fault under the rule that if a steamer be approaching another which has disregarded her signals, or whose positions or movements are uncertain, she is bound to stop until the course of the other vessel be ascertained. The New York, 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126.

The judgment of the District Court is affirmed.